**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TIM LEFEVER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No.:** |
| | : | |
| **EVE ENVIRONMENTAL SERVICES,** | : | |
| **INC. d/b/a C.E. PONTZ SONS, INC.** | : | |
| | : | **COMPLAINT IN CIVIL ACTION** |
| **Defendant.** | : | |
| | : | |

Filed on Behalf of Plaintiff:
Timothy Lefever

Counsel of Record for this Party:
**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:     (412) 545-3015
Fax No.:        (412) 540-3399
E-mail:         jward@jpward.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TIM LEFEVER,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : **Case No.:** |
| | : |
| **EVE ENVIRONMENTAL SERVICES,** | : |
| **INC. d/b/a C.E. PONTZ SONS, INC.** | : |
| | : |
| **Defendant.** | : |
| | : |

### COMPLAINT

AND NOW, comes Plaintiff, Tim Lefever, by and through the undersigned counsel, J.P. Ward & Associates, LLC., and, specifically, Joshua P. Ward, Esquire, who files the within Complaint in Civil Action against Defendant, Eve Environmental Services, Inc. d/b/a C.E. Pontz Sons, Inc., of which the following is a statement:

### PARTIES

1.      Plaintiff, Tim Lefever (hereinafter "Mr. Lefever"), is an adult individual who currently resides at 412 Mt. Sidney Road, Lancaster, Pennsylvania 17602.

2.      Defendant, Eve Environmental Services, Inc. d/b/a C.E. Pontz Sons, Inc. (hereinafter "C.E. Pontz") is a business located at 2355 New Holland Pike, #5933, Lancaster, Pennsylvania 17601.

1

**JURISDICTION AND VENUE**

3.      Jurisdiction is proper as Mr. Lefever brings this lawsuit under the Americans with Disabilities Act (hereinafter, the "ADA"), 42 U.S.C. § 12101, *et seq*., the Pennsylvania Human Relations Act (hereinafter, the "PHRA"), 43 Pa. Cons. Stat. § 951 *et seq*., and the Wage Payment and Collection Law (hereinafter the "WPCL"). 43 P.S. §260, *et seq*.

4.      Mr. Lefever is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Eastern Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

5.      This Court has supplemental jurisdiction over Mr. Lefever's state law claims pursuant to 28 U.S.C. § 1367(a).

**PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS**

6.      Mr. Lefever began his employment at C.E. Pontz on or about 2010 where he was most recently employed in the position of crew lead.

7.      Since his initiation of employment in 2010, Mr. Lefever has excelled in various positions including crew lead, laborer, and foreman.

8.       Throughout his employment, Mr. Lefever suffered from Type-1 diabetes. Notwithstanding this disability, Mr. Lefever monitored his blood sugar, ate appropriately and was conscientious of his physical health, all of which allowed him to satisfactorily perform the essential functions of his job without reasonable accommodation.

9.      On or about a date in 2015, Mr. Lefever's supervisor, Adrian Kapp (hereinafter "Mr. Kapp") became aware of Mr. Lefever's diabetes diagnosis.

10.     On or about October 10, 2018, Mr. Lefever broke his ankle, required time off, and reported the injury and need for time off to Mr. Kapp.

11.     In relation this injury and need for time off, Mr. Kapp remarked to Mr. Lefever that he had caused Mr. Kapp's insurance premium to rise and stated "you upped my insurance $8,000" in reference to the claim filed due to Mr. Lefever's injury.

12.     Thereafter, Mr. Kapp regularly made comments about Mr. Lefever's diabetes to Mr. Lefever, and other employees, despite the discord it created amongst the employees.

13.     These comments surpassed normal diligence and concern as Mr. Kapp regularly asked Mr. Lefever if he monitored his blood sugar and managed his symptoms. Furthermore, Mr. Kapp asked Mr. Lefever's coworkers to "watch out" for Mr. Lefever because of his diabetes.

14.     By making such comments, and monitoring Mr. Lefever in such a way, Mr. Kapp insinuated that he did not wish for the insurance premiums to rise because of Mr. Lefever's diabetes, nor that he be exposed to further cost/liabilities as a result of his employee's health.

15.     Mr. Lefever expressed disapproval of Mr. Kapp's continuous comments to other workers about his disability, mentioned that he did not wish to include other employees in these discussions, and advised Mr. Kapp to speak to him directly with any questions or concerns.

16.     Throughout his 10 years of employment at C.E. Pontz, Mr. Lefever never indicated to Mr. Kapp or other employees that his disability prevented him from performing the essential functions of his job.

17.     Even so, Mr. Kapp continued to publicize the nature of Mr. Lefever's medical status amongst the company.

18.     Despite Mr. Lefever's instruction, Bonnie Kapp, Mr. Kapp's mother and an administrative employee, interrogated Mr. Lefever about his diabetes as he waited in the office on one morning.

19.     Ms. Kapp's questions and comments about Mr. Lefever's disability, including that he cannot have any of the baked goods that she had made for the office, were unnecessary, alienating and intended only to harass Mr. Lefever.

20.     Moreover, such comments and interactions demonstrate the extent to which Mr. Kapp was concerned about Mr. Lefever's disability and the extent to which the disability was discussed.

21.     On or about March 2020, C.E. Pontz placed all staff on temporary leave due to the COVID-19 Pandemic.

22.     On or about May 11, 2020, Mr. Kapp asked Mr. Lefever, *via* text message, when he wished to return to work. A true and correct copy of this text message correspondence is attached hereto, made a part hereof, and is referenced as "Exhibit A."

23.     Mr. Lefever responded that he was available to return to work on May 25, 2020, and further stated in his text message, "if that's OK with you." There was never a response from Mr. Kapp to this text message. See "Exhibit A."

24.     Mr. Lefever again attempted to reach out to Mr. Kapp *via* text message in June of 2020, asking "when would you like me to return to work?" Mr. Kapp again failed to respond. See "Exhibit A."

25.     In July of 2020, Mr. Lefever contacted Mr. Kapp *via* text message once more, and stated, "[j]ust following up. When am I to start back to work?" Again, there was no response from Mr. Kapp. See "Exhibit A."

26.     Concerned by the fact that Mr. Kapp continued to ignore him, Mr. Lefever contacted coworkers, Wes Young and Bobby Kenyon, to determine whether they had also been ignored.

27.     Both Mr. Young and Mr. Kenyon stated that they had been working and were informed by Mr. Kapp that Mr. Lefever "didn't want to come back to work."

28.     Startled by the misinformation, Mr. Lefever called Mr. Kapp various times but was again ignored. When Mr. Kapp eventually returned the phone call, he stated that he "didn't have work for [Mr. Lefever]" and effectively terminated Mr. Lefever's employment.

29.     However, C.E. Pontz did have work to complete, and Mr. Kapp had hired multiple employees to fill Mr. Lefever's position in the interim.

30.     Mr. Kapp failed to articulate or explain any legitimate nondiscriminatory reason for his decision to termination Mr. Lefever's employment.

31.     At the time of his termination, Mr. Lefever had accrued three weeks of vacation time.

32.     C.E. Pontz refused to compensate Mr. Lefever for his three weeks of accrued vacation time after his termination.

## COUNT I
### DISCRIMINATION IN VIOLATION OF
### THE ADA AND THE PHRA

33.     Mr. Lefever incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

34.     To establish a *prima facie* case of discrimination under the ADA, Plaintiff must show: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations by the employer; and (3) he suffered an otherwise adverse employment decision as a result of

discrimination. See *McGlone v. Philadelphia Gas Works*, 17-1399, 2018 WL 2193658, at \*2 (3d

Cir. May 14, 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)

35.     The PHRA is modeled similarly to the ADA and shares similar burdens. The

analytical framework used to evaluate a disability discrimination claim under the PHRA is

effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both

ADA and PHRA claims on the same grounds. *Bialko v. Quaker Oats Co.*, 434 F. App'x. 139, 142

n.5 (3rd Cir. 2011) (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (noting

that the PHRA, in all "relevant respects," was "basically the same as the ADA" and was interpreted

"in accord" with the ADA and related case law, thus meaning that "disposition of [plaintiff's]

ADA claim applie[d] with equal force to his PHRA claim."

36.     Mr. Lefever is disabled within the meaning of the ADA and the PHRA.

37.     Having been employed by C.E. Pontz for ten years, across multiple positions, Mr.

Lefever was highly qualified for the position he held with C.E. Pontz.

38.     Following the rise of C.E. Pontz's insurance premium due to Mr. Lefever's injury,

Mr. Kapp continuously commented on Mr. Lefever's management of his diabetes in order to

ensure C.E. Pontz not be exposed to further cost/liabilities as a result of his employee's health.

39.     Further, Mr. Kapp constantly mentioned Mr. Lefever's disability to his coworkers

and told them to "watch out for [Mr. Lefever]."

40.     Subsequent to the temporary leave due to COVID, Mr. Kapp called back all

employees put on leave, except for Mr. Lefever.

41.     Despite Mr. Lefever's multiple attempts to return to work, Mr. Kapp replaced Mr.

Lefever, told him there was no work available, and effectively terminated Mr. Lefever's

employment.

42.     Mr. Kapp failed to articulate or explain any legitimate nondiscriminatory reason for his decision to termination Mr. Lefever's employment.

43.     The discriminatory termination was specifically related to Mr. Lefever's disability.

44.     As a direct and proximate cause of the aforementioned conduct, Mr. Lefever suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

45.     As set forth hereinabove, C.E. Pontz actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages are appropriate.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs and reasonable attorney's fees.

## COUNT II
**WPCL VIOLATIONS**

46.     Mr. Lefever incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

47.     Section 260.5(a) of the WPCL provides:

> Whenever an employer separates an employee from the payroll, or whenever an employee quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable.

43 P.S. §260.5(a).

7

48.     Wages include "all earnings of an employee, regardless of whether determined on time, task, piece, commission, or other method of calculation.  The term "wages" also includes fringe benefits or wage supplements…" 43 P.S. §260.2(a).

49.     Fringe benefits or wage supplements include "separation, vacation, holiday, or guaranteed pay…" 43 P.S. §260.2(a).

50.     Further, Section 260.4 of the WCPL provides:

> It shall be the duty of every employer to notify his employees at the time of hiring of the time and place of payment and the rate of pay and the amount of fringe benefits or wage supplements to be paid to the employee…and any change with respect to any of these items prior to the time of said change.  Alternatively, however, every employer may give such notification by posting the aforementioned facts and keeping them posted conspicuously at the employer's place of business.

43 P.S. §260.4

51.     Under the WPCL, the definition of employer "includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. §260.2a.

52.     The Pennsylvania WPCL, 43 P.S. §260.1 *et seq.*, however, does not provide "a statutory definition of the term 'employee'." *Frank Burns, Inc. v. Interdigital Communs. Corp.,* 704 A.2d 678, 680-81 (Pa Super. 1997).

53.     Courts in Pennsylvania have held that "any person in Pennsylvania can qualify as an employee under the WPCL," because "grammatically, an 'employee' is an entity that is employed," and "in the definition of employer, the entity employed by the employer, i.e., the employee, is any person in Pennsylvania." *Frank Burns v. Interdigital Communs. Corp.,* at 681.

8

54.     Pennsylvania courts have thus narrowed the definition of employee accordingly: "those who work in Pennsylvania can sue under the Pennsylvania statute, but those who do not work in Pennsylvania cannot." *Id.* Citing *Killian v. McCulloch*, 873 F. Supp. 938, 942 (E.D. Pa. 1995).

55.     As a company in the Commonwealth of Pennsylvania, C.E. Pontz is an employer within the definition of the WPCL 43 Pa. C.S. §260.1a.

56.     Mr. Lefever, based on the law cited above, was an employee of C.E. Pontz working within the Commonwealth of Pennsylvania.

57.     Mr. Lefever had accumulated and was owed approximately three weeks of paid vacation time.

58.     Mr. Lefever has not been paid for his entitled accrued paid vacation time.

59.     By failing to pay Mr. Lefever the benefits he is owed, C.E. Pontz violated 43 P.S. §260.5(a) of the WPCL.

60.     As a direct and proximate result of the aforementioned conduct, Mr. Lefever suffered actual damages, including, but not limited to, lost wages, emotion distress all in the past present and future.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in their favor and against Defendant and enter any and all wages of paid time off or vacation pay due to Plaintiff, liquidated damages pursuant to 43 P.S. §260.9 of the Wage Payment and Collection Law, costs, and attorney's fees, in addition to such other relief as deemed just and proper.

## COUNT III
## BREACH OF CONTRACT

61.     Mr. Lefever incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

9

62.     Mr. Lefever entered into a written agreement with C.E. Pontz for employment. This written agreement included paid vacation time which accrued over time.

63.     C.E. Pontz failed to compensate Mr. Lefever three weeks of this accrued paid vacation time.

64.     The same constitutes a material breach of contract.

65.     Mr. Lefever was deprived of the substantial benefit of their agreement as a result of C.E. Pontz's material breach of the parties' agreement.

66.     All conditions precedent to recovery have occurred.

67.     Mr. Lefever has suffered and will continue to suffer damages as the result of C.E. Pontz's breach.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in his favor and against Defendant and enter any and all monetary damages as described herein due to Plaintiff, including an award for actual damages, costs, and such other relief as this Honorable Court deems just and proper.

## COUNT V
## BREACH OF IMPLIED CONTRACT

68.     Mr. Lefever incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

69.     Under Pennsylvania law, "an implied-in-fact contract is a true contract arising from mutual agreement and intent to promise, but where the agreement and promise have not been verbally eC.E. Pontzed.  The agreement is inferred from the conduct of the parties." *In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987).

70.     "'A contract, implied in fact, is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being eC.E. Pontzed in

words, is inferred from their acts in the light of the surrounding circumstances.'" *Rissi v. Cappella*, 918 A.2d 131, 140 (Pa. Super. 2007) (quoting *Martin v. Little, Brown and Co.*, 450 A.2d 984, 987 (1981)).

71.     Mr. Lefever and C.E. Pontz were parties to an implied contract.

72.     The implied agreement provided that Mr. Lefever be provided with paid vacation time by C.E. Pontz.

73.     From initiation of Mr. Lefever's employment, C.E. Pontz has allowed Mr. Lefever to accrue paid time off.

74.     As of the filing date of this Complaint, C.E. Pontz has not paid Mr. Lefever for approximately three weeks of accrued paid vacation time.

75.     As a result of its failure to pay Mr. Lefever the abovementioned paid time off, C.E. Pontz has materially breached the implied contract with Mr. Lefever.

76.     As a direct and proximate result of the conduct of C.E. Pontz, having breached the implied contract as a whole, Mr. Lefever has suffered actual damages in the loss of wages for approximately three weeks of paid vacation time, and is entitled to recover the same.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in his favor and against Defendant and enter any and all monetary damages as described herein due to Plaintiff, including an award for actual damages, costs, and such other relief as this Honorable Court deems just and proper.

## COUNT VI
## QUASI-CONTRACT / UNJUST ENRICHMENT
### *(Pled in the Alternative)*

77.     Mr. Lefever incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

11

78.     Mr. Lefever and C.E. Pontz had no express contract for employment.

79.     Mr. Lefever conferred a benefit upon C.E. Pontz.

80.     C.E. Pontz appreciated the benefit of Mr. Lefever's time and efforts.

81.     It would be manifestly unjust if the C.E. Pontz's acceptance and retention of such benefits were permitted without payment of value to Mr. Lefever.

82.     As a direct and proximate cause of the aforementioned conduct, Mr. Lefever suffered actual damages, including, but not limited to, wage loss, loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in his favor and against Defendant and enter any and all monetary damages as described herein due to Plaintiff, including an award for actual damages, costs, and such other relief as this Honorable Court deems just and proper.

**JURY TRIAL DEMANDED.**

                                        Respectfully submitted,

                                        **J.P. WARD & ASSOCIATES, LLC**

Date: August 4, 2021                    By:  /s/ Joshua P. Ward, Esq.
                                             Joshua P. Ward (Pa. I.D. No. 320347)
                                             Kyle H. Steenland (Pa. I.D. No. 327786)

                                             J.P. Ward & Associates, LLC
                                             The Rubicon Building
                                             201 South Highland Avenue
                                             Suite 201
                                             Pittsburgh, PA 15206
                                             Counsel for Plaintiff